**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Michelle London-Marable and Frederick Marable, ) ) ) | |
| Appellants, ) ) | No. CIV 06-CV-2659-PHX-RCB No. (BK-5-4339-RTB) |
| vs. ) ) | Adversary No. 06-00274-RTB O R D E R |
| ) | |
| Alfonzo Foster Sterling, III, and Lauren Lynn Brooks-Sterling ) ) ) | |
| Appellees. ) | |

### *Introduction*

On October 26, 2006, the bankruptcy court entered judgment in favor of the defendants/appellees Alfonzo Foster Sterling, III and Lauren Lynn Brooks-Sterling ("the Sterlings"), and discharged the claim of plaintiffs/appellants Michelle London-Marable and Frederick Marable ("the Marables"). See Doc. 1 at 5. On November 2, 2006, the Marables timely filed their Notice of Appeal.[1] Id. at 2. They also timely filed a Statement of Election, in accordance

---

[1] There was an inordinate delay in perfecting this appeal. Finally, pursuant to a court order, the appeal was perfected on January 31, 2008. Thereafter, as further ordered by the court, the parties timely filed their briefs (docs. 9 and 10), with the last one, appellants' reply, being filed on April 30, 2008 (doc. 11).

with 28 U.S.C. § 158(c) and Fed. R. Bank. Pro. 8001(e), electing to have their appeal heard by this district court rather than by a three judge panel of the bankruptcy appellate panel service. Id. at 7. Pursuant to 28 U.S.C. § 158(c)(1),[2] this district court has jurisdiction to hear the Marables' appeal.

### *Background*

The facts here are simple, straightforward and uncontroverted. Ms. Marable took out a "Federal Direct PLUS loan," in the "approved amount" of $10,927.00 to provide her son, Mr. Sterling, with financial assistance while he attended college. Doc 1 (06-ap-00274) (Co.) at 2, ¶ IV; and exh. 1 thereto at 2; Doc. 7 (06-ap-00274) (Answer) at 1, ¶ 1.[3] With interest, the "total amount to be repaid" on that loan was "$17,306.68[.]" Id., exh. 1 thereto at 3, ¶ 3(f). The Direct PLUS loan is part of a federal program, "which was enacted to encourage parents to bear a share of a student's undergraduate educational costs." In re Norris, 239 B.R. 247, 249 n.2 (M.D.Ala. 1999) (citation omitted). "PLUS loans are authorized by Title 4, Part B of the Higher Education Act of 1965." Id. (citing 20 U.S.C. § 1078-2). As the PLUS program mandates,[4] Ms. Marable was the sole obligor on that loan. See Doc. 1 (06-ap-00274), exh. 1 thereto.

Thereafter, on February 22, 2000, Mr. Sterling "made, executed

---

[2] That statute provides in relevant part that "district courts . . . shall have jurisdiction to hear appeals . . . from final judgments . . . of bankruptcy judges[.]" 28 U.S.C. § 158(a)(1) (West 2006).

[3] A citation, as here, to the complaint in the adversary proceeding, followed by a citation to the answer in that same proceeding, means that the Sterlings admitted that fact in their answer.

[4] Norris, 239 B.R. at 249 n.2 (citation omitted)("Loans made under the PLUS program are unusual, if not unique, in imposing sole liability for repayment of the loan on the parent.")

-2-

1  and delivered to" Ms. Marable a "Loan re-payment Contract[,]" or
2  note, which states in its entirety as follows:

> I <u>Alfonzo. F. Sterling III,</u> will take on the
> full responsibility of the loan amount that I
> acquired during the duration of my completion
> of school at the University of Missouri-Columbia.
> My mother [Ms. Marable] being that the loan is in
> her name will only be responsible for the amount
> that was left over after all school transactions
> were paid in full.  The amount that we are
> responsible for paying back will be totaled after the
> completion of my schooling . . . at the University
> of Missouri-Columbia.  At no time will either of the
> two parties involved in paying the loan back will [sic]
> increase the others [sic] amount and at no time will
> the two parties being, [Mr.] Sterling. . . and [Ms.
> Marable], be responsible for any of the others [sic]
> part of the loan.

<u>Id.</u> at 2, ¶ VI; <u>see also id.</u>, exh. 2 thereto (copy of contract).
Mr. Sterling "defaulted" on that loan by failing to make payments
to Ms. Marable and allegedly owes her $16,549.39, plus interest.
<u>Id.</u> at 2, ¶ VII; and Doc. 7 (06-ap-00274) at 2, ¶ 2.

   On March 22, 2005, the Sterlings filed a joint Chapter 7
bankruptcy proceeding.  <u>Id.</u> at 2, ¶ III; and Doc. 7 at 1, ¶ 1.  In
Schedule F to their jointly filed Voluntary Petition, the Sterlings
listed Ms. Marable as a "Creditor Holding [an] Unsecured
Nonpriority Claim[.]"  Doc. 17 (06-ap-00274), exh. E thereto.  The
Sterlings further indicated that Ms. Marable had a "claim" in the
amount of "$13,000.00[,]" which "was incurred" in "May 2000[,]" for
a "personal loan[,]" *i.e.* the "Loan re-payment Contract."  <u>Id.</u>

   On February 17, 2006, the Marables commenced this adversary
proceeding seeking an order that the debt, as evidenced by the note
between Ms. Marable and Mr. Sterling, is "nondischargeable in
accordance with the provisions of 11 U.S.C. § 532(a)(2)[.]" Doc. 1
(06-ap-00274) at 3, Wherefore Clause at ¶ 1.  On cross-motions for

-3-

summary judgment, the Marables argued, as they do on this appeal, that Mr. Sterlings' student loan related debt to his mother is not dischargeable under that statute; and that it is a "community property" obligation within the meaning of A.R.S. § 25-215(B). Noting the absence of "questions of material fact[,]" the bankruptcy court held that section 523(a)(8) did not apply to Mr. Sterling's loan from his mother because "[t]hat section applies to debts of 'governmental units' and to obligations to repay an 'educational benefit, scholarship or stipend.'" Doc. 27 (06-ap-00274) at 1. In light of that holding, there was no need for the bankruptcy court to address the community property issue.

The bankruptcy court granted the Sterlings' summary judgment motion and denied the Marables' cross-motion for summary judgment. Following entry of judgment on that order, this appeal ensued. The Marables contend that this court should reverse and remand, finding that the debt is not dischargeable and that it is a community obligation; and "direct the [bankruptcy] court to enter summary judgment in the Plaintiff's [sic] favor." Reply Brief (doc. 11) at 5.

### *Discussion*

### *I.  Standard of Review*

The bankruptcy court's decision granting summary judgment is subject to *de novo* review. See In re AFI Holding, Inc., 525 F.3d 700, 702 (9th Cir. 2008) (applying the "same" *de novo* standard of review that the district court used to review the bankruptcy court's summary judgment determination). This means that "[t]he bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo[.]" In re

-4-

1  International Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007)
2  (citation omitted).  Here, the court will "review[] *de novo* whether
3  the bankruptcy court applied the correct legal standard in
4  discharging [Mr. Sterling's] student loan [related debt]."  See
5  Educational Credit Management Corp. v. DeGroot, 339 B.R. 201, 206
6  (D. Or. 2006) (citation omitted).  On this appeal, "the district
7  court . . . may affirm, modify, or reverse a bankruptcy judge's
8  judgment, order, or decree or remand with instructions for further
9  proceedings."  Fed. R. Bankr. P. 8013 (West 2005).

### *II. Dischargeable Debt?*

The primary issue on this appeal is whether Mr. Sterling's loan from his mother, Ms. Marable, is exempt from discharge under section 523(a)(8).  That statute was modified as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  In its amended form that statute was restyled.  The amendments also expanded the definition of student loans under section 523(a)(8) to include "qualified education loan[s], as defined in section 221(d)(1) of the Internal Revenue Code of 1986[.]"  11 U.S.C. § 523(a)(8)(B) (West Supp. 2008).  Thus, there is a preliminary issue as to which version of section 523(a)(8) applies here.

"Section 1501(a) of the [BAPCPA] states,'[e]xcept as otherwise provided in this action, this Act and the amendments made by this Act shall take effect 180 days after the date of enactment.'"  In re Bacote, 2006 WL 3732993, at *8 n.16 (Bankr. S.D.N.Y. 2006) (quoting P.L. 8, 1501).  "BAPCPA was enacted April 20, 2005."  Id.  "Therefore, BAPCPA took effect on October 17, 2005."  Id.  Congress was clear though that "[t]he amendments made by [BAPCPA]

-5-

shall not apply with respect to *cases commenced* under Title 11 United States Code, before the effective date of this Act.'" In re Kilroy, 354 B.R. 476, 496 n. 9 (Bankr. S.D. Tex. 2006) (quoting 109 P.L. § 1501(b)(1)) (emphasis added by Kilroy court) (other citation omitted), aff'd on other grounds, 2007 WL 1456006 (S.D. Tex. 2007).

Here, the Sterlings' Chapter 7 petition, was filed March 22, 2005, prior to the effective date of BAPCPA. "Since issues involved in the adversary proceeding will be issues spawning from the main bankruptcy case, the law governing the main bankruptcy case will govern the adversary proceeding." Id. (internal quotation marks and citation omitted). That means that in the present case the pre-BAPCPA version of section 523(a)(8) governs, even though the adversary proceeding was filed February 23, 2006, well after BAPCPA's effective date. See id. (footnote omitted) (applying the pre-BAPCPA version of the Bankruptcy Code where "the main case was filed prior to October 17, 2005, . . . despite the fact that the adversary proceeding was filed after [BAPCPA's] effective date[]"); see also In re Ammar, 368 B.R. 629, 631 n.2 (Bankr. E.D.Mich. 2007) (applying the Bankruptcy Code as written prior to the BAPCPA amendments where the debtor's petition was filed prior to those amendments, but the adversary proceeding was filed after); and Bacote, 2006 WL 3732993, at *8 n.16 (BAPCPA did not apply "[a]lthough Plaintiff's adversary proceeding was commenced after BAPCPA had taken effect, Plaintiff's petition for relief under Chapter 7 was filed on April 3, 2002, well before BAPCPA had taken effect.")

"Generally, student loan obligations are presumed to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)."

- 6 -

1  In re Rifino, 245 F.3d 1083, 1087 (9th Cir. 2001).  The pre-BAPCPA
2  version of that statute basically exempts from discharge three
3  categories of debt concerning "educational benefit[s][,]" unless
4  there is a showing of "undue hardship[:]" (1) "overpayment[s] or
5  loan[s] made, insured or guaranteed by a governmental unit[;]" or
6  (2) loans "made under any program funded in whole or in part by a
7  governmental unit or nonprofit institution[;]" or (3) loans "for an
8  obligation to repay funds received as an educational benefit,
9  scholarship or stipend[.]"  11 U.S.C. § 523(a)(8) (West 2004).  The
10 Sterlings urge one reading of this statute, whereas the Marables
11 urge another.  More specifically, the Sterlings contend that the
12 note between Mr. Sterling and Ms. Marable is dischargeable because
13 it does not fall into either of the first two clauses of that
14 statute in that it was neither "guaranteed by a governmental unit,"
15 nor "funded . . . by a nonprofit institution[.]"  See id.

16      Viewing the PLUS loan as the "original **source** of the money"
17 for the subject debt, the Marables contend that debt was for "an
18 educational . . . loan made, insured or guaranteed by a
19 governmental unit within the provisions of 11 U.S.C. 523(a)(8)."
20 See In re Reid, 39 B.R. 24, 26 (Bankr. E.D. Tenn. 1984).
21 Accordingly, absent a showing of undue hardship, the Marables
22 contend that the note is not dischargeable under that statute.
23 And, as the Marables are quick to point out, the Sterlings have not
24 even argued, much less shown, undue hardship.

25      Then, shifting their focus to the third clause of section
26 523(a)(8), the Marables assert that the contract between Ms.
27 Marable and her son was "for an obligation to repay funds received
28 as an educational benefit."  Thus, they argue that that debt comes

within the purview of that statute, and hence it is not dischargeable.  The basis of this argument is that unlike the preceding clauses, the third clause of section 523(a)(8) does not contain qualifying language such as "guaranteed by a governmental unit," or "funded . . . by a nonprofit institution."  Therefore, without such qualifying language, the Marables reason that the third clause encompasses the subject debt.  In the end, for the reasons set forth below, neither of these arguments is persuasive.

To support their argument that the subject debt was incurred as a result of an "educational loan . . . guaranteed by a government unit[,]" the Marables rely upon three cases – In re Norris, 239 B.R. 247 (M.D. Ala. 1999); Reid, 39 B.R. 24; and In re Owens, 161 B.R. 829 (Bankr. D. Neb. 1993).  To be sure, in each of those cases the court held that the PLUS loan was not dischargeable under section 523(a)(8).  Those cases are wholly inapposite, however, because in each of these three cases the debtor seeking a discharge was a parent who had obtained a PLUS loan to assist in their child's college education.  Clearly those PLUS loans were "guaranteed by a government unit."  The debts at issue in those three cases did not involve, as here, a loan between two private individuals.

In further reliance upon Owens, the Marables urge the court to "focus[,]" among other things, "on the nature of the . . . lender involved[.]" Opening Brief (doc. 9) at 4 (quoting Owens, 161 B.R. at 830).  But when the court does that, it necessarily finds that the "lender involved" was Ms. Marable – a private individual and most decidedly not a "governmental unit" or "nonprofit institution" for section 523(a)(8) purposes.  In short, the Marables are

- 8 -

focusing on the wrong obligation.  It is not the PLUS loan which the Sterlings are seeking to discharge, but rather the debt under the contract  between two private individuals – Ms. Marable and Mr. Sterling – a debt separate and apart from the PLUS loan which was Ms. Marable's sole obligation.

The Marables' argument that the subject debt is exempt from discharge because it falls under the third category of section 523(a)(8), is similarly unavailing.  Several canons of statutory construction inform the court's analysis at this point.

"The starting point for interpreting a statute is the language of the statute itself." In re Thorson, 195 B.R. 101, 104 (9th Cir. BAP 1966) (citation omitted).  "[B]ankruptcy provisions will be interpreted according to their plain meaning except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." In re Majewski, 310 F.3d 653, 656 (9th Cir. 2002) (internal quotation marks and citation omitted).  In a similar vein, "[a]bsent a clearly expressed intention to the contrary, that language must ordinarily be regarded as conclusive." In re Pilcher, 149 B.R. 595, 597 (9th Cir. BAP 1993) (quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).  Moreover, "'[w]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" Camacho v. Bridgeport Financial Inc., 430 F.3d 1078, 1081 (9th Cir. 2005) (quoting Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)).

1   In In re Meinhart, 211 B.R. 4750 (Bankr. D. Colo. 1997), a case upon which the Sterlings heavily rely, the court was faced with the same argument which the Marables are making, that "the third clause of § 523(a)(8) should be read independently of the other provisions[]" of that statute to "mean[] that *all* student loans are dischargeable, not simply those made or guaranteed by governmental or nonprofit organizations." See In re Reis, 274 B.R. 46, 49 (Bankr. D. Mass. 2002) (emphasis added).  Rejecting that interpretation of section 523(a)(8), the Meinhart court cogently reasoned:

> Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder.  The former, longer lived portions of Section 523(a)(8) would, therefore, be rendered meaningless.  Such a conclusion is contrary to another clear mandate of statutory construction: A statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous.

Id. at 753-754 (citing, *inter alia*, Rake v. Wade, 508 U.S. 464, 471-72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993)).  Primarily for that reason, the Meinhart court held that a loan made by a private, for-profit truck driving school to one of its students was dischargeable because that loan did not come within section 523(a)(8)'s protections from discharge.  See also In re Scott, 287 B.R. 470 (Bankr. E.D. Mo. 2002) (same); and In re Jones, 242 B.R. 441 (Bankr. W.D. Tenn. 1999) (same).

The Meinhart reasoning was adopted by the court in Reis, a case more factually analogous to the present one, and a case upon which the Sterlings also rely.  The Reis court held that the third clause of section 523(a)(8) did not apply to a loan which

1  grandparents had made to their granddaughter so that she could
2  attend hair styling school.  Reasoning that the
3  debtor/granddaughter's "obligation arose out of a loan extended by
4  a private party; [and that] the loan was not made pursuant to a
5  student loan program of a governmental unit or a nonprofit
6  entity[,]" the Reis court held that the debt to the grandparents
7  did "not qualify as a student loan and d[id] not come within the
8  exception to discharge under § 523(a)(8)."  Reis, 274 B.R. at 50.
9       The court agrees with Meinhart and its progeny and sees no
10 reason to depart from the sound reasoning of those cases.[5]
11 Reading the third clause of section 523(a)(8) to except from
12 discharge *all* loans or contracts for educational benefits would
13 render the preceding clauses superfluous.  Such a reading also
14 would run afoul of the well-settled rule of statutory construction
15 that "[i]n reading a statue [a court] must not 'look merely to a
16 particular clause,' but consider 'in connection with it the whole
17 statute.'"  Dada v. Mukasey, 2008 WL 2404066, at *9 (U.S. June 16,
18 2008) (quoting, *inter alia*, Kokoszka v. Belford, 417 U.S. 642, 650,
19 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974)) (other citations omitted)).
20 Similarly, reading section 523(a)(8) in the way which the Marables
21 urge would also violate the general principle that "[c]ourts must
22 give meaning to every clause and word of a statute."  In re
23 Kagenveama, 2008 WL 2485570, at *2 (9th Cir. 2008) (citing
24 Negonsott v. Samuels, 507 U.S. 99, 106 (1993)).  The Marables'
25 suggested reading would not allow the court to do that.
26      Although not dispositive, another factor which augurs in favor

---

[5] Somewhat tellingly, in their Reply the Marables did not even mention, let alone attempt to distinguish, the Meinhart line of cases.

- 11 -

of a finding that the subject debt is not exempt from discharge under section 523(a)(8) is the legislative history.  The court agrees that 523(a)(8) is "unambiguous[,]" and thus it is "unnecessary" to look to the "little legislative history . . . available."  See Meinhart, 211 B.R. at 754.  Nonetheless, when the court does that, the legislative history shows that the primary purpose of that statute was "to remedy abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing for bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs."  In re Segal, 57 F.3d 342, 348 (3rd Cir. 1995) (citing, *inter alia*, 124 Cong.Rec. 1791-98 (1978)).  Clearly the financial integrity of such educational loan programs is not implicated here by discharging a private debt.

The court is keenly aware that in In re Micko, 356 B.R. 210 (Bank. D.Ariz. 2006), the court reached what at first glance might appear to be a contrary reading of section 523(a)(8).  After parsing that statute, the Micko court held that it "provides a broad description of obligations to repay money modified only by the words 'received as an educational benefit.'" Id. at 216.  Thus, based on a "plain language reading of th[at] statute[,]" the court held that the debtor's obligation to repay a private, not-for-profit entity specializing in loans to students for higher education was not dischargeable under that statute absent a showing of undue hardship.  Id.  Significant to the court's analysis there was the lender's "establish[ment] [of] procedures which [we]re substantially similar to a governmental unit or a nonprofit lender."  Id. at 217.  In fact, that lender "specialize[d] in

- 12 -

1 servicing educational loans made pursuant to the Federal Family
2 Education Loan Program[,]" and had begun its operation as a
3 nonprofit lender.  Id. at 215.  "Such an entity," the Micko found,
4 "should be entitled to the protections of Section 523(a)(8)."  Id.
5 at 217.

6     Despite the Micko court's broad reading of the third clause of
7 section 523(a)(8), that case does not compel a different result
8 here.  Micko is readily distinguishable on its facts in that it
9 involved an entity which not only was in the student loan business,
10 but engaged in "practices . . . much like those of the non-profit
11 lenders and governmental units that Section 523(a)(8) is intended
12 to protect: namely those that lend money only to students obtaining
13 higher education, and whose abilities to lend money to additional
14 students largely depends on the repayment of prior loans."  Id. at
15 215 (citation omitted).  Micko did not, as here, involve a private,
16 individual making a one-time loan to a relative.  Not only that,
17 the Micko court was careful to "acknowledge[] concerns" regarding
18 its interpretation, stressing that such "concerns . . . may be
19 addressed on a case-by-case basis."  Id. at 217.  In this case,
20 because the lender was not an entity, but a private individual, the
21 Micko rationale is inapplicable.

22     In sum, the plain meaning of the third clause, when read in
23 the context of section 523(a)(8) as a whole, readily supports a
24 finding that that statute does not apply to the debt at issue here.
25 Further, because this is not one of those "rare cases [in which]
26 the literal application of a statute will produce a result
27 demonstrably at odds with the intention of its drafters[,]"
28 Majewski, 310 F.3d at 656 (internal quotation marks and citation

1  omitted), and because this result is "not absurd[,]" the court will
2  "enforce [section 523(a)(8)] according to its terms." See Camacho,
3  430 F.3d at 1081 (internal quotation marks and citation omitted).
4  Enforcing that statute in accordance with its terms results in this
5  court affirming the bankruptcy court's grant of summary judgment in
6  favor of the Sterlings and that court's further finding that the
7  subject debt is dischargeable.

### III.  Community Obligation?

The court agrees with the Sterlings that its finding that the challenged debt is dischargeable, obviates the need to address the issue of whether that debt is a community obligation. See Appellants' Opening Brief (doc. 10) at 1.  Put differently, the finding of non-dischargeability renders moot the community property issue.

IT IS ORDERED affirming the Bankruptcy Court's judgment dated October 26, 2006, entering judgment in favor of the defendants, Alfonzo Foster Sterling, II and Lauren Lynn Brooks-Sterling, and discharging the claim of the plaintiffs, Michelle London-Marable and Frederick Marable.

DATED this 9th day of July, 2008.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record

- 14 -